The PEOPLE of the State of Colorado,
Plaintiff–Appellant and Cross–
Appellee,

v.

Fred Gordon LUKE, Defendant–Appellee
and Cross–Appellant.

No. 95CA1644.

Colorado Court of Appeals,
Div. V.

May 29, 1997.

Rehearing Denied June 26, 1997.

Certiorari Denied Dec. 2, 1997.

David H. Zook, Chief Deputy District Attorney, Colorado Springs, for Plaintiff–Appellant and Cross–Appellee.

Elvin L. Gentry, P.C., Elvin L. Gentry, Colorado Springs, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROY.

Defendant, Fred Gordon Luke, was charged with two offenses under the Colorado Limited Gaming Act. Following a preliminary hearing, the district court dismissed all charges. The People appeal that dismissal. Defendant filed a cross-appeal asserting constitutional arguments in support of the trial court order which were made to, but not relied upon by, the trial court. We affirm in part, reverse in part, and remand for further proceedings.

On June 30, 1993, Nona Morelli's, Inc., (the applicant) filed an application with the Colorado Division of Gaming (the Division) seeking a license to operate a limited gaming casino in Cripple Creek, Colorado. The application prompted an investigation of the applicant during which the investigator became aware that defendant had become the applicant's Chief Operating Officer.

During a subsequent investigatory telephone conversation, defendant told the investigator he had paid $10 million by the transfer of investment securities in exchange for 24 million shares of the applicant's voting convertible preferred stock. This gave defendant 40 percent of the outstanding voting shares and he assumed the position of Chief Operating Officer.

Defendant later filed a key employee application with the Division because of his interest and management of the applicant. In conjunction with his application, defendant was required to provide certain information concerning himself. Most particularly, defendant was required to disclose "all lawsuits to which you have been a defendant, in which a judgment or settlement was rendered against you, since age 18." In responding, defendant made certain representations about his business relationship, or lack thereof, with a co-defendant in one of the cases reported.

Section 12–47.1–839, C.R.S. (1991 Repl.Vol. 5B) provides that any false or misleading statement made with respect to the Colorado Limited Gaming Act constitutes a class 5 felony. The language of § 18–20–104, C.R.S. (1996 Cum.Supp.) and § 12–47.1–802, C.R.S. (1991 Repl.Vol. 5B) are identical and provide:

Any person who knowingly makes a false statement in any application for a license or in any statement attached to the application, or who provides any false or misleading information to the commission or the division ... commits a class 5 felony. . . .

Count one of the information alleged defendant made two false statements on his key employee application in violation of § 18–20–104, § 12–47.1–802, and § 12–47.1–839. The count alleged that defendant had failed to report a case brought in a United States District Court in California under the Civil Racketeering Influence and Corrupt Practices Act, 18 U.S.C. § 1001 (1994)(RICO), which was settled. The count also alleged that defendant had misrepresented his relationship with J.R. Halder, Inc., and George R. Hallett, III, by stating there was no such relationship. George R. Hallett, III, had been a co-defendant in one of the cases reported by defendant.

In dismissing the first count, the trial court explained that "rendered," as used in the interrogatory is a term of art, that there was no evidence the court in the omitted litigation ever approved, entered, or adopted a judgment, and therefore, that there was no probable cause to believe the omission constituted a false statement. The trial court concluded that the statement regarding the relationship with J.R. Halder, Inc., and George R. Hallett, III, was not "materially false."

Count two of the information alleged that defendant provided misleading information to the Division regarding his acquisition of a controlling interest in the applicant in violation of §§ 18–20–104 and 12–47.1–802 in his telephone conversation with the investigator. More particularly, the count alleged that the securities transferred to the applicant for a controlling interest and represented to be worth $10 million were, in fact, pre-World War II German bonds issued by the Weimar Republic, the value and redeemability of which are subject to considerable conjecture.

In dismissing count two, the trial court found that defendant's statement regarding the value of the investment securities used to purchase a controlling interest in the applicant was misleading but immaterial and that,

because they lacked the element of materiality, § 12–47.1–802 and § 18–20–104 were unconstitutionally overbroad.

## I.

The People first argue that the trial court erred in interpreting § 12–47.1–802 and § 18–20–104 to require an element of materiality. We agree.

We review the trial court's interpretation of a statute de novo. *See Regional Transportation District v. University of Colorado Hospital Authority,* 921 P.2d 56 (Colo. App.1996). In construing a statute, we must derive and give effect to the intent of the General Assembly, looking first to the plain language of the statute. *R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo.1992).

Sections 12–47.1–802 and 18–20–104, which prohibit a "false or misleading" statement, were adopted together and neither requires that the misrepresentation be material. *See* Colo. Sess. Laws 1991, ch. 263 at 1557, 1584.

The Limited Gaming Act of 1991 was enacted in response to the adoption by the electorate of Article XVIII, Section 9 of the Colorado Constitution. Its purpose is to implement the provision and regulate the limited gaming industry.

The General Assembly's declaration stated in § 12–47.1–102, C.R.S. (1991 Repl.Vol. 5B) provides, in pertinent part, as follows:

(1) The general assembly hereby finds, determines, and declares it to be the public policy of this state that:

(a) The success of limited gaming is dependent upon public confidence and trust that licensed limited gaming is conducted honestly and competitively; that the rights of the creditors of licensees are protected; and that gaming is free from criminal and corruptive elements;

(b) Public confidence and trust can be maintained only by strict regulation of all persons, locations, practices, associations, and activities related to the operation of licensed gaming establishments and the

manufacture or distribution of gaming devices and equipment;

(c) All establishments where limited gaming is conducted and where gambling devices are operated and all manufacturers, sellers, and distributors of certain gambling devices and equipment ... must therefore be licensed, controlled and assisted to protect the public health, safety, good order, and the general welfare of the inhabitants of the state to foster the stability and success of limited gaming and to preserve the economy and policies of free competition of the state of Colorado;

(d) No applicant for a license or other affirmative commission approval has any right to a license or to the granting of the approval sought. Any license issued or other commission approval granted pursuant to the provisions of this article is a revocable privilege, and no holder acquires any vested right therein or thereunder.

(2) It is the intent of the general assembly that, to achieve the goals set forth in subsection (1) of this section, the commission should place great weight upon the policies expressed in said subsection (1) in construing the provisions of this article.

In addition, all licensees and all officers, directors, and stockholders of corporate licensees are to be persons of good moral character, honesty, and integrity and are to be free of reputations, habits, and associations which create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, and activities in the conduct of limited gaming or the financial arrangements incidental to the conduct of gaming. Section 12–47.1–801, C.R.S. (1991 Repl.Vol. 5B).

With respect to implying a materiality requirement, our supreme court's analysis in *People v. Francois*, 198 Colo. 249, 598 P.2d 144 (1979) is dispositive. *Francois* involved a prosecution for witness tampering, and the trial court instructed the jury to consider the materiality of testimony withheld by the witness in deciding whether the defendant had tampered with the witness in violation of the applicable statute. The language of the statute at issue there, like the limited gaming statute here, did not contain a materiality requirement.

The supreme court held that a requirement of materiality could not be read into the statute as:

It was the legislature's prerogative to define the statutorily created crime of tampering with a witness as it did. It is not for this court to read into the statute the additional element of materiality.

*People v. Francois, supra,* 198 Colo. at 250–51, 598 P.2d at 145. *See also United States v. Wells,* —— U.S. ——, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997) (materiality will not be read into statute prohibiting making false statements for the purpose of influencing action by federally insured bank).

Likewise, here, the General Assembly could have added an element of materiality to §§ 12–47.1–802 and 18–20–104 but chose not to do so. In addition, its express intent to regulate strictly limited gaming supports the conclusion that §§ 12–47.1–802 and 18–20–104 were meant to prohibit false and misleading statements by persons involved, or wishing to become involved, in the limited gaming business, without regard to materiality.

Therefore, we hold that the trial court erred in imposing a materiality requirement on §§ 12–47.1–802 and 18–20–104 and reverse the dismissal of count one as it relates to defendant's representation about his relationship with J.R. Halder, Inc., and George R. Hallett, III, and all of count two.

## II.

Defendant argues in support of the trial court's order that, absent a materiality requirement, § 12–47.1–802 and § 18–20–104 are unconstitutionally overbroad. We disagree.

Again, we review de novo the trial court's interpretation of a statute. *See Regional Transportation District v. University of Colorado Hospital Authority, supra.*

▪ A statute is presumed to be constitutional, and the party asserting otherwise must establish its unconstitutionality beyond a reasonable doubt. *People v. Gurule,* 924 P.2d 1164 (Colo.App.1996).

██ A statute may be unconstitutionally overbroad on its face when, in addition to prohibiting speech that is not protected, it substantially infringes upon speech that is protected by the First Amendment. A statute should be found constitutional, however, if a limiting construction will confine its application to unprotected speech. *Whimbush v. People,* 869 P.2d 1245 (Colo.1994).

██ False statements of fact, and false or misleading statements, are not entitled to constitutional protection. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Sections 12–47.1–802 and 18–20–104 prohibit false and misleading statements and, therefore, have a very limited application which does not extend to any constitutionally protected speech.

██ Therefore, we conclude that §§ 12–47.1–802 and 18–20–104 do not prohibit constitutionally protected speech and are not unconstitutionally overbroad.

### III.

We also reject defendant's argument made in support of the trial court's order dismissing the case that § 12–47.1–802 and § 18–20–104 are unconstitutionally vague.

██ A statute is not unconstitutionally vague if it:

fairly describes the conduct forbidden so that persons of common intelligence can readily understand its meaning and application. A penal statute must be sufficiently definite to give fair warning of proscribed conduct ... [and] must define an offense with sufficient clarity to prevent arbitrary and discriminatory enforcement of the statute.

*People v. Janousek,* 871 P.2d 1189, 1195 (Colo.1994).

██ Here, §§ 12–47.1–802 and 18–20–104 give fair warning that it is a crime for anyone involved in the limited gaming business to knowingly make a false or misleading statement to any gaming division or commission personnel. In our view, the statutory language clearly delineates the prohibited conduct. Therefore, the statutes are not unconstitutionally vague.

### IV.

With respect to defendant's statement over the telephone to the Division investigator concerning the nature and amount of his investment in the applicant, the trial court found the statement to be misleading but immaterial to the then pending application of the applicant. We have already held that materiality is not a requirement under the statutes.

On appeal, defendant further argues that no actionable misrepresentation was made because: (1) he had not yet filed his key employee application; (2) the investigator was not the commission or division; and (3) the applicant was not a licensee at the time the statements were made. We disagree.

██ At the time the statements were made to the investigator, defendant was the Chief Operating Officer of the applicant which had an application pending for a license to operate a limited gaming establishment. Defendant's capacity with the applicant was such that he could speak for the applicant and his relationship to the applicant, was the subject of legitimate inquiry in conjunction with the review of that application. Therefore, it is not necessary that defendant have an individual key employee application pending or that the applicant be a licensee at the time the alleged false statement is made, or false or misleading information provided. This is especially true in light of the General Assembly's express purposes in regulating the limited gaming industry. *See* §§ 12–47.1–102(1)(b) & 12–47.1–801, C.R.S. (1991 Repl.Vol. 5B).

██ Likewise, we disagree with defendant's assertion that the statute is inapplicable to the statement because the investigator was neither the commission nor the division. Governmental agencies, like corporations, act through agents; therefore, a statement made to an agent of the commission or division while acting in his or her official capacity is a statement to the commission or division for the purposes of the statute.

### V.

Count one alleged the misrepresentations with respect to defendant's responses to two

separate and distinct inquiries. The action was dismissed with respect to both inquiries on the grounds that any false statement, or false or misleading information, was immaterial, and we have reversed the dismissals on that ground. The other alleged misrepresentation in count one, the failure to report defendant's involvement as a party defendant in a civil action, was separately dismissed for lack of evidence. The People contend that that dismissal was also error. We disagree.

With regard to this second alleged misrepresentation, defendant was required to report judgments or settlements "rendered against" him. The interrogatory did not, however, request a listing of all civil litigation in which the applicant was, or had ever been, involved as a party defendant.

The trial court dismissed the allegation, concluding there was no evidence that the court in the omitted civil proceedings ever took any action on the settlement reached by the parties and, therefore, that the settlement was not "rendered against" defendant. The trial court reasoned that the phrase "rendered against" is a term of art used in the legal community which refers to the judicial act of deciding upon or imposing a remedy or sanction. We agree with this analysis. *See generally Black's Law Dictionary* 1296 (6th ed.1994).

Indeed, our review indicates that the phrase "rendered against" has never been used in conjunction with "settlement" by an appellate court of this state in the manner contemplated by the question.

It is the obligation of the person propounding the question to craft it in such a way as to elicit the information desired and to make an omission a misrepresentation. *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973).

In *Bronston,* the Supreme Court reversed a perjury conviction and held that a jury should not be permitted to speculate whether a truthful but unresponsive answer was intended to divert the examiner from the information sought. Similarly, here, the jury should not be permitted to conjecture whether defendant read the question broadly and knowingly misrepresented the circumstances by failing to report the case, or read the question narrowly and, from his perspective, answered it accurately.

The order of the trial court dismissing count one as to the failure to report the civil case is affirmed. The trial court's dismissal of the remainder of count one and all of count two is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

DAVIDSON and ROTHENBERG, JJ., concur.