The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Joseph SORRENDINO, Defendant–
Appellant.

No. 00CA0172.

Colorado Court of Appeals,
Division III.

Aug. 30, 2001.

Rehearing Denied Oct. 11, 2001.

Certiorari Denied Jan. 14, 2002.

Ken Salazar, Attorney General, Kristin W. Dale, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Joseph Sorrendino, appeals the judgment of conviction and sentence entered upon a jury verdict finding him guilty of violation of a custody order. We affirm and remand the case with directions.

In May 1999, defendant removed his two-year-old son from Colorado in violation of the terms of temporary restraining orders awarding care and control of the child to the mother. Subsequently, defendant was located with the child in Tennessee, arrested, returned to Colorado, and convicted of violating a custody order, a class 5 felony, and violating a restraining order, a class 2 misdemeanor. The court sentenced him to three years of incarceration plus two years of parole in connection with the former crime; the court did not sentence him with respect to the latter crime.

Defendant appeals his conviction and sentence for violating a custody order. He contends that the evidence is insufficient to sustain this conviction because the order he violated would not, as a matter of law, qualify as a "custody order" for purposes of § 18–3–304(2). He also argues that, in any event, his conviction must be reversed because of an erroneous instruction defining "custody order," and that his sentence must be reversed because of prosecutorial misconduct.

As a preliminary matter, we note that, as of February 1, 1999, the General Assembly substituted the phrase "parental responsibilities" for the terms "custody," "custodial," and "custodian," in many of our state statutes. See Colo. Sess. Laws 1998, ch. 310, at 1376–1415. See also § 14–10–103(4), C.R.S. 2000. In this case, the parties proceeded upon the basis of the statutes in effect when the temporary restraining orders were issued in January 1999. Because the General Assembly did not intend to modify or alter legal rights as a result of its change in terminology, see § 14–10–103(4), C.R.S.2000, we likewise proceed on that basis.

### I. Sufficiency of the Evidence: Custody Order

Relying primarily on the rule of lenity, defendant contends that the applicable version of § 18–3–304(2) penalized only violations of permanent, not temporary, custody orders. He also contends that a court's award to one parent of "temporary care and control" of a child did not constitute even a temporary custody order. Consequently, he argues that the evidence could not support his conviction for violating a custody order. We disagree.

The applicable version of § 18–3–304(2) penalized:

> any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eighteen years.

See Colo. Sess. Laws 1971, ch. 121, § 18–3–304(2) at 422 (formerly codified at § 18–3–304(2), C.R.S.1998).

The interpretation of statutes is a question of law subject to *de novo* review. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000).

In interpreting § 18–3–304(2), our task is to ascertain and give effect to the intent of the General Assembly. *People v. Swain*, 959 P.2d 426, 429 (Colo.1998). To discern legislative intent, we look first to the plain language of the statute itself. *People v. McNeese*, 892 P.2d 304, 310 (Colo.1995). We do not presume that the legislature used language idly. *People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001). When the statutory language is clear and unambiguous, we interpret the statute as written without resort to interpretive rules and statutory construction. *People v. Zapotocky*, 869 P.2d 1234, 1238 (Colo.1994).

However, when a statute is susceptible of more than one reasonable interpretation, a court must look beyond the language of the statute and consider other factors, *State v. Nieto*, 993 P.2d 493, 501 (Colo.2000), such as other statutes bearing on the same or similar subjects, *see People v. Harris*, 914 P.2d 425, 429–30 (Colo.App.1995), the object sought to be attained, and the consequences of a particular construction. *See* § 2–4–203(1)(a), (e), C.R.S.2000. If, after having employed the various aids to statutory construction, we are still unable to discern controlling legislative intent, the rule of lenity requires that we construe the statute favor-

ably to the accused. *People v. Pierrie,* 30 P.3d 816 (Colo.App.2001).

With these principles in mind, we proceed to an analysis of defendant's arguments.

### A. *Permanent v. Temporary Custody Order*

■ Here, by its terms, § 18–3–304(2) penalized the violation of "an order ... granting custody ..., with the intent to deprive the lawful custodian of ... custody." There were no words limiting or qualifying the type of custody order covered by the statute. Defendant would have us, in effect, inject the word "permanent" between the words "granting" and "custody." However, a court should not read into a statute an exception, limitation, or qualifier that its plain language does not suggest, warrant, or mandate. *See Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo.2000).

Significantly, in other contexts, the General Assembly had used the particular limiting or qualifying language preferred by defendant here. *See* Colo. Sess. Laws 1994, ch. 329, § 19–3–703 at 2058; Colo. Sess. Laws 1992, ch. 38, § 19–4–130 at 184 ("permanent" custody). Had the General Assembly intended to limit § 18–3–304(2) to only "permanent" custody orders, it could have easily done so by including language to that effect. *See Hendricks v. People, supra,* 10 P.3d at 1235 (construing statutes allowing defense counsel to raise mental status defense over defendant's objection); *Mason v. People,* 932 P.2d 1377, 1380 (Colo.1997)(construing speedy trial statute); *People v. Luke,* 948 P.2d 87, 90 (Colo.App.1997)(construing elements of limited gaming offense).

■ Our conclusion that the General Assembly did not intend to limit the applicability of § 18–3–304(2) to only permanent custody orders finds support in the purpose underlying the enactment of the statute. Section 18–3–304(2) was designed to deter abductions of children from their lawful custodians: " 'But for it, or a similar [statute], there would be no adequate protection for a parent, who has been awarded exclusive custody of a child, against its unlawful seizure and removal to another state by the one ousted of its custody and control.' " *People v. Tippett,* 733 P.2d 1183, 1189 (Colo.1987)(quoting *Lee v. People,* 53 Colo. 507, 511, 127 P. 1023, 1025 (1912)). Even temporary custodial rights ought to find protection under the statute, *see State v. Chapman,* 108 Idaho 841, 702 P.2d 879, 881 (Ct.App.1985)(child kidnapping); *State v. Teynor,* 141 Wis.2d 187, 414 N.W.2d 76, 81 (Ct.App.1987)(false imprisonment of child); otherwise, parents would have an incentive, as here, to abduct their children during the pendency of permanent custody proceedings.

Our conclusion is further supported by decisions of courts in other jurisdictions involving analogous circumstances. *See People v. Beach,* 194 Cal.App.3d 955, 967–71, 240 Cal. Rptr. 50, 56–58 (1987)(upholding child stealing conviction upon proof that mother took child in violation of interim custody order); *State v. Chapman, supra; Commonwealth v. Bachir,* 45 Mass.App.Ct. 204, 210, 696 N.E.2d 948, 952 n. 5 (1998)(parental kidnapping conviction based on violation of provision in restraining order awarding temporary custody); *State v. Alladin,* 408 N.W.2d 642, 646 (Minn.Ct.App.1987)(rejecting claim that temporary custody order could not subject parent to kidnapping charge); *State v. Patten,* 353 N.W.2d 30, 32–34 (N.D.1984)(temporary custody order qualified as a "custody decree," for purposes of violation of an existing custody decree); *State v. Teynor, supra.*

Accordingly, we conclude that § 18–3–304(2) penalized violations of temporary and permanent custody orders alike and that the rule of lenity does not apply in this case. *See People v. Pierrie, supra* (rule of lenity is applied only to resolve unyielding statutory ambiguity). *See also People v. Wiedemer,* 852 P.2d 424, 431 (Colo.1993)(rule of lenity may not be applied to defeat the evident intention of the legislature).

### B. *Temporary "Care and Control" Orders*

■ We also reject defendant's argument that the temporary "care and control" provisions of the restraining order did not constitute a temporary custody order for purposes of § 18–3–304(2).

The temporary restraining orders here were issued pursuant to Colo. Sess. Laws 1982, ch. 67, § 14–4–102(2), at 299 (formerly codified at § 14–4–102(2), C.R.S.1998) and Colo. Sess. Laws 1971, ch. 130, § 14–10–108 at 522 (formerly codified at § 14–10–108, C.R.S.1998).

Section 14–4–102(2)(d)(I) authorized courts to include, in temporary restraining orders issued to prevent domestic abuse, provisions "[a]warding temporary care and control of any minor children of either party involved." Similarly, § 14–10–108(2.5) authorized district courts, in domestic relations cases, to "award interim legal custody of a child" as part of a temporary restraining order "when such award is reasonably related to preventing domestic abuse as defined in section 14–10–104 or preventing a child from witnessing domestic abuse."

■ "Statutes pertaining to the same subject matter must be read *in pari materia* in order to insure legislative intent is fulfilled and to avoid inconsistency." *People v. Harris, supra,* 914 P.2d at 429–30. Reading §§ 14–4–102(2) and 14–10–108(2.5) together, we conclude that an award of "temporary care and control" was an award of "interim legal custody." Our conclusion in this regard is bolstered by the General Assembly's explicit directive to award "temporary care and control" of minor children "in accordance with section 14–10–124." *See* Colo. Sess. Laws 1994, ch. 327, § 14–4–102(2)(d)(III) at 2031–32 (formerly codified at § 14–4–102(2)(d)(III), C.R.S.1998). Section 14–10–124 explicitly set forth the legal standard used for making custody determinations. *See* Colo. Sess. Laws 1971, ch. 130, § 46–1–24 at 529–30 (formerly codified at § 14–10–124(1.5), C.R.S.1998).

In our view, then, that part of the temporary restraining order in which the court awarded "temporary care and control" of the child qualified as an order granting custody within the meaning of § 18–3–304(2).

■ Defendant's further argument that this "type" of custody order is insufficient, because it awards only "physical," and not "legal," custody, is unavailing. We find no indication in the temporary restraining order

that the court intended to split its custody award in any manner. Further, the crime of violating a custody order involves "the taking of a child from the physical control of the legal custodian," *People v. Tippett, supra,* 733 P.2d at 1188, who in this case was the mother.

## II. Instruction Defining "Custody Order"

Defendant contends that the trial court's instruction defining "custody order" usurped the factfinding function of the jury and improperly expanded the grounds upon which the jury could find him guilty. We disagree.

The phrase "custody order" was not defined in § 18–3–304(2), or in any other provision in the criminal code, or in any pattern jury instruction. Nevertheless, at the prosecution's urging, the trial court crafted a definition of "custody order," blending the definition of "custody" in *Black's Law Dictionary* 390 (7th ed. 1999) with the definition of "custody determination" in the Uniform Child Custody Jurisdiction Act. Colo. Sess. Laws 1973, ch. 163, § 14–13–103(2) at 557 (formerly codified at § 14–13–103(2), C.R.S.1998). Accordingly, the court instructed the jury that:

> A custody order means a court decision and court orders and instructions providing for the care, maintenance and control of a child, including parenting time rights.

Defendant argues that: (1) by repeating the "care and control" language of the temporary restraining order, the instruction invaded the factfinding function of the jury; and (2) by using the term "maintenance," the instruction improperly expanded the meaning of the phrase "custody order" to include decisions relating to child support. We are not persuaded.

### A. Invading Jury's Factfinding Function

■ Regarding defendant's first argument, a trial court invades the jury's factfinding function when it instructs the jury that the prosecution has satisfied its burden of proof with respect to an element of a crime, *People v. Gracey,* 940 P.2d 1050, 1053 (Colo. App.1996); when, in the absence of a stipulation, it directs the jury to accept as fact any

portion of the evidence, *see People v. Tally*, 7 P.3d 172, 177 (Colo.App.1999)(*cert. granted* Aug. 28, 2000); or when it otherwise intimates to the jury that it regards certain facts to be established. *See People v. Williams*, 916 P.2d 624, 627–28 (Colo.App.1996).

■ A trial court does not, however, invade the province of the jury when it instructs the jury in neutral terms on points of law. *People v. Williams, supra.* This is so even where the language of the court's instruction is readily applicable to the circumstances of a case. *See, e.g., United States v. Chavez*, 119 F.3d 342, 348–49 (5th Cir.1997)(rejecting claim that instruction was a "virtual recitation of the testimony against" defendant and hence improperly directed a verdict of guilt on an element of the offense); *Hendrix v. State*, 230 Ga.App. 604, 605, 497 S.E.2d 236, 238 (1997)(rejecting, in case involving sexual assault of a nine-year-old child, claim that instruction on the age of consent proved element of victim's nonconsent).

■ Here, the trial court instructed the jury on a definition of an element of the crime, just as it would do had the element been defined by statute or in a pattern jury instruction. *See People v. Burke*, 937 P.2d 886, 890 (Colo.App.1996)(court has discretion to provide supplementary definitional instructions). The trial court did not instruct the jury that the prosecution had proven the custody order element of the crime. Nor did the court express a personal opinion or otherwise intimate that the jury should consider the element to have been established.

In these circumstances, we cannot conclude that the trial court's instructions invaded the factfinding function of the jury.

### B. Expanding the Meaning of "Custody Order"

■ Defendant also argues that the court erred in using the term "maintenance" in defining the phrase "custody order." However, because this argument was not presented to the trial court but was raised for the first time on appeal, reversal is not warranted in the absence of plain error. *See generally People v. Kruse*, 839 P.2d 1, 3 (Colo. 1992). We conclude that no error occurred.

In arguing that the court erred in defining "custody order" in terms of "maintenance," defendant relies upon § 14–13–103(2), C.R.S. 1998 and *Armendariz v. People*, 711 P.2d 1268, 1269–70 (Colo.1986).

Defendant's reliance on the former § 14–13–103(2) to demonstrate error in the use of the word "maintenance" is misplaced. In § 14–13–103(2), the phrase "custody determination" was defined, for purposes of the Uniform Child Custody Jurisdiction Act, as not including "a decision relating to child support or any other monetary obligation of any person."

In Colorado, the term "maintenance" has acquired a technical legal meaning of providing financial support for a spouse or former spouse. *See* § 14–10–114, C.R.S.2000. The term is not generally associated with a child. *See* § 14–10–115, C.R.S.2000 (using "child support" terminology).

The common understanding of the term "maintenance" is not restricted solely to financial considerations. *See Webster's Third New World International Dictionary* 1362 (1986) ("maintenance" defined as "the act or providing the means of support for someone"); *Black's Law Dictionary* 953–54 (6th ed. 1990)(defining "maintenance" to include "sustenance; support; assistance; aid. The furnishing by one person to another, for his or her support, of the means of living, or food, clothing, shelter, etc.... The supplying of the necessaries of life."). And, as used in this context, its meaning appears closely related to the meaning of the term "care." *See, e.g., Leithold v. Plass*, 413 S.W.2d 698, 700 (Tex.1967)("custody" includes "the elements of immediate and direct care and control of the child, together with provision for its needs"); *In re Marriage of Westrate*, 124 Wis.2d 244, 248, 369 N.W.2d 165, 168 (Ct. App.1985)("A custodial environment exists when a child naturally looks to the parent in that home for guidance, discipline, the necessities of life and parental comfort in a stable, settled atmosphere").

For similar reasons, defendant's reliance on *Armendariz v. People, supra*, is mis-

placed. In *Armendariz*, the supreme court held that the crime of kidnapping of a child could not be based on violating an order that, while requiring the father to pay child support, did not determine which parent had custody of the child. Unlike the situation in *Armendariz*, there was no danger here that defendant would be convicted of violating a custody order simply because he did not adhere to an order to pay child support. The instruction defined "custody order" not in terms of care, control, *or* maintenance, but, rather, in terms of care, control, *and* maintenance. Through this definition, the jury was informed that a custody order necessarily encompasses directions for the care and control of a child.

Accordingly, we conclude that the trial court did not erroneously instruct the jury regarding the meaning of the term "custody order."

### III. Prosecutorial Misconduct

Finally, defendant contends that his sentence was irretrievably tainted by the prosecutor's allusion, during the sentencing hearing, to another case involving the crime of violation of a custody order. We disagree.

Even if the prosecutor erred in alluding to the other case, reversal is not required because the trial court stated it would not punish defendant for what happened in that other case.

We do not view the trial court's subsequent comments about the other case as reflecting a preoccupation with it. The court distinguished, to defendant's benefit, what had happened there from what happened here. Further, the record reflects that the three-year sentence imposed here was primarily attributable to: (1) the impact this offense had on the victim, the mother of the child; and (2) evidence indicating that, if left at large, defendant was likely to repeat this offense.

Only in exceptional circumstances will an appellate court substitute its judgment for that of a trial court in sentencing matters. *People v. Smith*, 943 P.2d 31, 34 (Colo.App.1996). Such circumstances have not been shown to exist in this case.

Accordingly, the judgment of conviction and sentence are affirmed. The case is remanded, however, for the imposition of sentence with respect to defendant's conviction of violating a restraining order.

Judge JONES and Judge MARQUEZ concur.