889 P.2d 1

STATE of Arizona, Appellee,

v.

Gilbert L. MALDONADO, Appellant.

No. 1 CA–CR 92–0562.

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 20, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Kent E. Cattani, Asst. Atty. Gen., Phoenix, for appellee.

Jan J. Raven, Phoenix, for appellant.

## OPINION

FOREMAN, Judge.*

Gilbert L. Maldonado intended to call Epitasio Valdez as a witness at his trial. The trial court precluded Valdez from testifying after it determined that Valdez properly intended to exercise his Fifth Amendment privilege against self-incrimination as to all questions. We conclude that the trial court did not abuse its discretion and affirm.

Maldonado was convicted after a jury trial of driving while under the influence of intoxicating liquor (DUI) and driving with an alcohol concentration of .10 percent or more—both with two prior DUI convictions in the previous 60 months. He received concurrent terms of three years probation with six months in prison followed by six months in the county jail. We have jurisdiction. Ariz. Const. art. 6, § 5; Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–120.21 (1992).

### Factual Background

We review the facts in the light most favorable to sustaining the verdict. *State v. Zmich,* 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989). On August 17, 1991, a Phoenix police officer followed Maldonado into the parking lot of a Circle K on South Central Avenue. The officer testified that he noticed Maldonado was driving a white Ford pickup erratically and dangerously.

Because the officer was going off duty he called for backup and a second officer arrived to conclude the processing of the arrest. Maldonado flunked the field sobriety tests. He also admitted "operating" the pickup and

drinking four beers. His breath alcohol test result of .20 percent was twice the presumptive level of undue influence.

At trial, the first officer identified Maldonado as the driver of the truck, and further testified that the lone passenger in the truck was continuously seated next to the driver during this initial encounter. The sole defense was misidentification. Maldonado hoped that Valdez would testify that Valdez, not Maldonado, was the driver—or at least that the arresting officers were mistaken in identifying Maldonado as the driver. On the morning of the second day of trial, defense counsel informed the trial court that her office, the Maricopa County Public Defender's Office, had previously represented Valdez. The prosecutor had informed her that Valdez was on probation for driving with a suspended license, that his driver's license had been suspended, and that it would be a violation of his probation to admit he was driving that night. Because the proposed testimony might be incriminating, defense counsel asked the trial court to appoint independent counsel to represent Valdez.

The trial court, after expressing concern about the lateness of the request, appointed counsel who interviewed Valdez with the assistance of an interpreter. At the beginning of the afternoon session the trial court met with counsel for the state, counsel for Maldonado, and counsel for Valdez in chambers. Counsel for the state and counsel for Valdez advised the court that Valdez would invoke his Fifth Amendment privilege against self-incrimination to all questions connecting him to Maldonado's case.

The prosecution asked that the witness be precluded from testifying. The defense argued that there were at least some questions to which the witness could testify that would not involve the legitimate exercise of the Fifth Amendment.

Before ruling, the trial court sent counsel to interview Valdez. Following the interview, counsel returned to chambers and the trial court resumed its inquiry. Valdez was

---

* The Honorable John Foreman, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.

not present for the hearing in chambers nor was he directly questioned by the trial court. However, the prosecutor recounted verbatim for the trial court the questions that he had asked Valdez:

"Were you drinking that night?"

"Were you driving that night?"

"Was your license suspended that night?"

"Could you feel the effects of alcohol?"

"Was defendant driving his truck?"

"At any time that night was the defendant driving?"

"Did you see the police behind you when you were in the truck?"

"What did you want to tell the officers?" (The defense contended that Valdez tried to tell the officers something that night, but was unable to do so.)

"Was there any alcohol in the truck?"

Valdez refused to answer each question, relying upon the advice of his attorney to exercise his Fifth Amendment privilege against self-incrimination.

After continued detailed questioning of each counsel, the trial court expressly relied on *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983), to exclude Valdez from testifying.

## Legal Analysis

This is another in a line of difficult cases requiring the trial court to balance the defendant's Sixth Amendment right to compulsory process against a witness's Fifth Amendment right to avoid self-incrimination. See, for example, *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Cornejo*, 139 Ariz. 204, 677 P.2d 1312 (App.1983); *State v. Henry*, 176 Ariz. 569, 863 P.2d 861 (Ariz. 1993).

■ A criminal defendant has a Sixth Amendment right to compulsory process to obtain favorable testimony. *Washington v. State of Texas*, 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–1923, 18 L.Ed.2d 1019 (1967). However, this right is not absolute. *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76. For example, "[a] valid assertion of the witness' Fifth Amendment rights justifies a refusal to

testify despite the defendant's Sixth Amendment rights." *United States v. Goodwin*, 625 F.2d 693, 700 (5th Cir.1980). When a trial court does prohibit a criminal defense witness from testifying, the defendant cannot establish a Sixth Amendment violation absent a showing that the evidence lost was both material and favorable to the defense. *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76 (citing *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873, 102 S.Ct. 3440, 3449–50, 73 L.Ed.2d 1193 (1982)).

■ Similarly, a witness does not possess an absolute right to raise the Fifth Amendment to avoid testifying. The witness must first show a " 'reasonable ground to apprehend danger' " from his being compelled to answer. *State v. Cornejo*, 139 Ariz. at 207, 677 P.2d at 1315 (quoting *United States v. Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir.1976)).

■ These competing claims of right may be resolved by the trial court, in some cases, by totally excusing the witness from testifying without violating the defendant's Sixth Amendment right to compulsory process. *State v. Corrales*, 138 Ariz. 583, 588, 676 P.2d 615, 620 (1983) (finding that the decision to permit counsel to call a witness who has indicated he will refuse to testify is within the trial court's discretion); *see also McDaniel*, 136 Ariz. at 194, 665 P.2d at 76; *Goodwin*, 625 F.2d at 701 (5th Cir.1980); *Melchor Moreno*, 536 F.2d at 1045–46 (5th Cir.1976). However, this exception to the defendant's Sixth Amendment right to call the witness to the stand is narrow. *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76. It should be applied only where the trial court has "extensive knowledge of the case" and finds that the witness can legitimately invoke the Fifth Amendment to all relevant questions asked of him. *Id.*

■ Maldonado challenges the process used by the trial court to make its decision as well as its conclusion to preclude Valdez from testifying. We begin our analysis by reviewing the hearing held by the trial court.

Both *McDaniel* and *Cornejo* express a preference for a hearing outside the presence of the jury where the trial court can person-

ally question the witness under oath to determine the legitimacy of the witness's invocation of the Fifth Amendment. *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76; *Cornejo*, 139 Ariz. at 207, 677 P.2d at 1315.[1] However, nothing in *McDaniel*, *Cornejo*, or any of the federal cases upon which those decisions rely, hold that it is error for the trial court to fail to personally question the witness under oath or to fail to have the witness questioned in the presence of the court.

We do not believe that the preference for direct questioning under oath by the trial court should be made into a rigid requirement. The procedure used by the trial court was a reasonable effort to obtain the "extensive knowledge" required by *McDaniel*. Trial courts should have the discretion to control the trial process to accommodate the exigencies that routinely occur.

In the present case, the trial court was able to duplicate the elements of reliability necessary to preserve the integrity of its decision-making process. The trial court questioned counsel for Maldonado to determine what questions Valdez would be asked and why they were relevant to the defense. The trial court also questioned counsel for Valdez about Valdez's reasons for invoking the Fifth Amendment. Furthermore, with all counsel present, the trial court had the prosecutor recite in detail the results of the interview he had with Valdez. At no time during this in-chambers hearing did any of the three counsel, all of whom had previously met with the witness, contest the reliability of the record. We think that under these circumstances the trial court was justified in relying on counsels' recitation of facts.

We also find that the trial court did not abuse its discretion in precluding Valdez from testifying. Valdez could validly exercise his privilege against self-incrimination not only as to answers that would directly support criminal liability but as to answers that would "furnish a link in the chain of evidence needed to prosecute [Valdez]." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The record indicates that Valdez was on probation for an undesignated felony and counsel indicated that his license to drive was suspended. The theory of the defense was that Valdez, not Maldonado, was the driver. Valdez was the only other occupant of the pickup. Any answer to a question by Valdez that exculpated Maldonado logically would tend to incriminate Valdez. We agree with the trial court that Valdez could legitimately refuse to answer essentially all relevant questions.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035(B). We found none. The judgment and sentences of the trial court are affirmed.

GERBER, P.J., and GRANT, J., concur.

---

1. In *McDaniel*, the supreme court stated:
> If upon conducting an in camera hearing the trial judge determines that a witness could legitimately refuse to answer essentially all relevant questions, then that witness may be totally excused without violating an individual's Sixth Amendment right to compulsory process.

136 Ariz. at 194, 665 P.2d at 76.
Similarly, in *Cornejo*, the court of appeals said:

"[O]utside the presence of the jury, the witness will allude in very general, circumstantial terms to the reasons why he feels he might be incriminated by answering a given question. The judge examines him only far enough to determine whether there is a reasonable ground to apprehend danger."
139 Ariz. at 207, 677 P.2d at 1315 (quoting *Melchor Moreno*, 536 F.2d at 1046).