The **PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Victor L. MOSLEY, Defendant–**
**Appellant.**

**No. 04CA0587.**

Colorado Court of Appeals,
Div. VI.

May 3, 2007.

Rehearing Denied Aug. 2, 2007.

John W. Suthers, Attorney General, Cheryl Hone Canaday, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Victor L. Mosley, appeals the judgments of conviction entered upon jury verdicts finding him guilty of three counts of sexual assault on a child by one in a position of trust (pattern of abuse), nine counts of sexual assault on a child by one in a position of trust, and one count of crime of violence. He also appeals the sentences imposed in connection with these convictions. We reverse and remand for a new trial.

Defendant's convictions arose out of allegations that he sexually abused his youngest daughter from 1996 to 2001, when she was between the ages of seven and twelve. The prosecution's case consisted of the victim's testimony, the victim's earlier videotaped statement, and evidence that defendant had sexually assaulted two of his other daughters and a stepdaughter.

Defendant testified in his own defense. He denied having sexually assaulted the victim, her half-sisters, or her stepsister. He also elicited evidence that, despite ample opportunity to do so, two of the three other sisters, had not, until the youngest sister made her accusations, complained of any inappropriate behavior by defendant.

The jury found defendant guilty as charged. The trial court imposed consecutive sentences for an aggregate term of seventy-five years to life imprisonment.

### I. Right of Confrontation

Defendant contends that reversal is required because the trial court placed a barri-

er between him and his accuser during her testimony at trial. We agree.

### A. Facts

When the prosecution indicated to the court that it was having a "little difficulty" getting the fourteen-year-old victim to take the stand, the court excused the jury. And because the victim had indicated that she was afraid of defendant, the prosecution requested that defendant temporarily leave the courtroom, which he did.

Thereafter, the victim took the stand, and she told the court that she was "scared" of "everything," including defendant. When the court suggested different seating arrangements, the victim indicated that that would not help, and that she did not want defendant in the room: "The only thing that would help is him not being here."

After the prosecutor noted that the closed-circuit television system was not working, the court proposed setting up a physical barrier between the victim and defendant. Again, the victim indicated that that would not help.

When the court stated that it was willing to find the victim "unavailable" to testify, the prosecution requested additional time to see whether it could present her testimony. After about twenty minutes, the victim took the stand and, in the presence of defendant and the jury, testified about her home, school, family, parents, and school counselor. When asked to describe a person's "private parts," however, she balked and requested a five-minute recess. Because, as the court put it, "problems continue[d]," the case was recessed until after lunch.

When the trial resumed, the prosecution informed the court that the victim had changed her mind and now wanted a barrier. Defense counsel objected, stating:

> I'm not sure I wouldn't have been agreeable if that was at the start of this. Now, we've had 10 or 15 minutes of testimony. We've had numerous hours of dealing with this witness. I think it's highly prejudicial to my client when he's not done anything wrong ... when nothing out of the ordinary ... has taken place.

Nonetheless, the court ordered a visual barrier, that is, an easel, to be placed between the witness stand and defendant. Upon its return to the courtroom, the jury was instructed that the easel had been installed at the request of the victim, and, "[You are] to draw no adverse inferences at all from the fact that this easel has been put up. You are to draw no inference that the Court is favoring one side or the other in this particular case."

On appeal, defendant asserts that the trial court's placement of a barrier which precluded him from seeing the victim during her testimony violated his constitutional right to confront adverse witnesses.

### B. Standard of Review

Initially, we conclude that defendant has not properly preserved this objection for review because he objected not to placement of the barrier but to the timing of its placement. He did not complain that he was unable to see his accuser. Rather, he expressed concern that the jury would believe that he had done something improper to warrant the need for a physical barrier.

Because the objection in the trial court is not the one pursued here on appeal, we conclude that reversal is not warranted absent a finding of plain error. *See* Crim. P. 52(b); *People v. Kruse*, 839 P.2d 1, 3 (Colo. 1992).

Plain error is error that is "obvious," "substantial," and "grave." *Moore v. People*, 925 P.2d 264, 268–69 (Colo.1996). "Plain error assumes that the [trial] court should have intervened sua sponte because the error was so obvious," *People v. Petschow*, 119 P.3d 495, 505 (Colo.App.2004), and prejudicial. *See People v. Grant*, —— P.3d ——, ——, 2007 WL 177679 (Colo.App. No. 03CA1034, Jan. 25, 2007) (plain error is error that seriously affects the substantial rights of the accused and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction).

## C. Legal Principles

 "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding. . . ." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990). The Confrontation Clause affords two types of protections to criminal defendants: the physical right to face those who testify against them, and the right to cross-examine adverse witnesses. *Coy v. Iowa*, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988).

In *Coy v. Iowa, supra*, 487 U.S. at 1014, 108 S.Ct. at 2799–2800, the defendant's conviction for sexually assaulting two thirteen-year-old girls was reversed on Confrontation Clause grounds because the trial court allowed the girls to testify from behind a screen. The Supreme Court determined that the Confrontation Clause guaranteed "the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa, supra*, 487 U.S. at 1016, 108 S.Ct. at 2801. The Court reasoned:

> A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." It is always more difficult to tell a lie about a person "to his face" than "behind his back."

*Coy v. Iowa, supra*, 487 U.S. at 1019, 108 S.Ct. at 2802 (citations omitted)(quoting Z. Chafee, *The Blessings of Liberty* 35 (1956) ).

The Court saved for "another day" the question whether the right to face-to-face confrontation of trial witnesses was subject to exceptions. *See Coy v. Iowa, supra*, 487 U.S. at 1021, 108 S.Ct. at 2803.

Two years later, in *Maryland v. Craig, supra*, a closely divided Supreme Court upheld a defendant's sexual assault convictions despite the victims' having testified outside the defendant's presence via one-way closed-circuit television. The Supreme Court reasoned that the "preference" for face-to-face confrontation "must occasionally give way to considerations of public policy and the neces-

sities of the case." *Maryland v. Craig, supra*, 497 U.S. at 848, 110 S.Ct. at 3165 (quoting *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)). The Court recognized that a State's interest in protecting the physical and psychological well-being of child abuse victims could, in some cases, be sufficiently important to outweigh a defendant's right to be face-to-face with his or her accusers in court. *See Maryland v. Craig, supra*, 497 U.S. at 853–56, 110 S.Ct. at 3168–69 (such would be the case when the trial court finds that (1) a special procedure is necessary to protect the welfare of the particular child witness; (2) the particular child witness would be traumatized by the presence of the defendant—not by the proceedings generally; and (3) the child witness will suffer more than de minimis emotional distress if forced to testify in the presence of the defendant).

Even then, a dispensation of face-to-face confrontation would be permissible only if "the reliability of the testimony is otherwise assured." *Maryland v. Craig, supra*, 497 U.S. at 850, 110 S.Ct. at 3166. However, the Court was less than clear about what would be necessary to "assure the reliability of the testimony."

The Court noted that the elements of an oath, cross-examination, and observation of the witness's demeanor "adequately ensure[ ] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Maryland v. Craig, supra*, 497 U.S. at 851, 110 S.Ct. at 3166.

In discussing the last of those elements, the Court at one point indicated that a witness's demeanor need only be observed by the jury or trier of fact. *Maryland v. Craig, supra*, 497 U.S. at 846, 110 S.Ct. at 3163. However, in upholding the use of closed-circuit television to present the testimony of a child witness, the Court found it significant that "the judge, jury, *and defendant* are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." *Maryland v. Craig, supra*, 497 U.S. at 851, 110 S.Ct. at 3166 (emphasis added).

We need not resolve here whether a defendant's view of a witness's demeanor is an indispensable ingredient of the limited right of confrontation recognized in *Maryland v. Craig, supra.*

In 1996, the General Assembly enacted a statute that specifically prescribed the procedure that was to be used to protect a child sex assault victim from the serious emotional distress or trauma that could result from testifying in a defendant's presence. *See* Colo. Sess. Laws 1996, ch. 144, § 18–3–413.5 at 677–79 (now recodified with amendments as § 16–10–402, C.R.S.2006).

At the time of defendant's September 2003 trial, the applicable version of § 18–3–413.5(1)(a), Colo. Sess. Laws 2003, ch. 134 at 974, authorized the use of closed-circuit television to obtain the live testimony of a sex assault victim who "at the time of trial [was] ... less than twelve years of age." The jury was to be in the courtroom or in the same room with the victim while he or she testified, and the victim's testimony was to be "televised ... in the courtroom" where the defendant and the judge would be present. Colo. Sess. Laws.1996, ch. 144, § 18–3–413.5(1)(a), (2)(a)(VI), (2)(b) at 678.

As in *Maryland v. Craig, supra,* the closed-circuit television procedure authorized by the applicable version of § 18–3–413.5 gave the defendant a right of great significance, namely, the right to observe and assess the victim's demeanor while testifying. *See People v. Lofton,* 194 Ill.2d 40, 251 Ill. Dec. 496, 740 N.E.2d 782, 794 (2000)("[T]he right to confront witnesses includes ... the ability to be of aid in counsel's cross-examination. Here the defendant's inability to observe the manner of the witness while testifying could have prejudiced him by limiting his ability to suggest lines of examination to his attorney that might have been indispensable to effective cross-examination." (citations omitted) ); *cf. State v. Lipka,* 174 Vt. 377, 817 A.2d 27, 33 (2002) ("The seating arrangement devised by the trial court in this case indisputably deprived defendant of the opportunity to observe the witness's demeanor during her testimony, contrary to this [Confrontation Clause] requirement.").

In *State v. Nutter,* 258 N.J.Super. 41, 609 A.2d 65, 74 (App.Div.1992), the court observed:

[W]e agree that theoretically a policy interest sufficient to outweigh the right to physical confrontation may exist without the formality of statutory codification. However, when the Legislature has considered the issue of the protection of child witnesses and has delineated with precision those limited circumstances which, upon appropriate findings, will prevail over a defendant's right to face-to-face confrontation, that is the expression of the public policy of this state. We are not free to engraft onto it our own vision of what our public policy is, or should be.

For these reasons, we likewise conclude that the relevant version of § 18–3–413.5 represented the General Assembly's judgment as to how best, and under what circumstances, to accommodate the public's interest in protecting child sex assault victims consistent with a defendant's right to face-to-face confrontation of adverse witnesses. *See Price v. Commonwealth,* 31 S.W.3d 885, 894 (Ky. 2000)("the statute creates a narrow exception to a constitutional right, [and] thus, its provisions should be scrupulously followed"); *see also People v. Lofton, supra,* 251 Ill.Dec. 496, 740 N.E.2d at 790, 794 (where the legislature authorized the use of closed-circuit television, the trial court's use of podiums to block the defendant's view of the child witness was "unauthorized").

### D. Analysis

■ Here, the trial court departed in three respects from the requirements of the statute: (1) it dispensed with defendant's right to face-to-face confrontation with the victim, who, because of her age (fourteen), was not eligible for special protection; (2) it did not limit itself to the authorized, closed-circuit television procedure for providing special protection to victims; and (3) it did not allow defendant to observe the demeanor and body language of the victim, thus depriving him of the opportunity to aid counsel in effectively cross-examining her.

■ We conclude that, in doing so, the trial court committed "obvious" error that

seriously affected defendant's substantial rights. We also conclude that the error undermines our confidence in the reliability of defendant's conviction.

The record demonstrates severe reluctance by the victim to testify in defendant's presence. Indeed, she would not have testified without some type of special accommodation. Therefore, the improper barrier allowed the prosecution to introduce a substantial amount of evidence, including the victim's live testimony and out-of-court statements, that otherwise would not have been admitted. *Cf. Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004) (discussing admissibility of "testimonial" hearsay under Confrontation Clause); *Compan v. People,* 121 P.3d 876, 880–81 (Colo. 2005)(same). Without this evidence, it is highly unlikely that defendant would have been convicted.

We acknowledge "[t]hat face-to-face presence [with a defendant] may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional [and statutory] protections have costs." *Coy v. Iowa, supra,* 487 U.S. at 1020, 108 S.Ct. at 2802 (discussing constitutional protections).

We therefore conclude that the use of the barrier was sufficiently prejudicial to qualify as plain error requiring a new trial.

### II. Other Issues

We also address the following issues that were raised in this appeal and are likely to arise on retrial:

### A. Evidence of Other Bad Acts

■ Contrary to defendant's contention, the trial court did not abuse its discretion in admitting evidence that defendant sexually assaulted the three other girls. Such evidence is logically relevant, independent of any inference of defendant's bad character, to rebut the assertion that the victim fabricated her stories and to show a common scheme, plan, or design, or to show intent. *See* § 16–10–301(3), C.R.S.2006; CRE 404(b).

The evidence demonstrated a longstanding pattern (first, from 1979–1983; then, from 1987–1996) of defendant's preying upon young females in his household, leading up to the time when he allegedly began sexually abusing the victim. *See* § 16–10–301(1), C.R.S.2006 ("normally the probative value of [evidence of other sexual acts] will outweigh any danger of unfair prejudice, even when incidents are remote from one another in time"); *Adrian v. People,* 770 P.2d 1243, 1246 (Colo.1989) (any difficulties caused by remoteness of other bad act evidence outweighed by its contribution to showing a "compelling pattern and remarkable similarity of defendant's sexual misconduct").

### B. Evidence of Prior Consistent Statements

The trial court may admit only those prior consistent statements of the sisters that are offered (1) to rebut an express or implied charge of recent fabrication or improper influence or motive or (2) to rehabilitate a witness who has been impeached with a prior inconsistent statement. *See People v. Elie,* 148 P.3d 359, 362 (Colo.App.2006); *see also People v. Segura,* 923 P.2d 266, 268 (Colo.App.1995)(discussing foundation for admitting prior consistent statements under CRE 801(d)(1)(B) ).

### C. Prosecutorial Misconduct

The trial court shall disallow (1) questions by the prosecution asking a witness whether another witness is lying and (2) arguments by the prosecution expressing a personal opinion about the veracity of a witness. *See Liggett v. People,* 135 P.3d 725, 732 (Colo. 2006) ("asking a witness to opine on the veracity of another witness is prejudicial, argumentative, and ultimately invades the province of the fact-finder"); *Domingo–Gomez v. People,* 125 P.3d 1043, 1049, 1050 (Colo.2005) ("a prosecutor cannot communicate [his or] her opinion on the truth or falsity of witness testimony during final argument," and use of "[t]he word 'lie' . . . necessarily reflects the personal opinion of the speaker").

### D. Multiple Convictions

The prosecution presented sufficient evidence to support convictions on each of the twelve alleged counts. If, upon retrial, the jury finds defendant guilty of more than one count, the trial court shall impose judgments of conviction and sentences in accordance with *Quintano v. People,* 105 P.3d 585, 589–92 (Colo.2005); *Woellhaf v. People,* 105 P.3d 209, 214–18 (Colo.2005); and *People v. Mintz,* 165 P.3d 829, —— (Colo.App. 2007).

Accordingly, the judgments of conviction and sentences are reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.

Judge GRAHAM and Judge RUSSEL concur.