NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JAMES LAYTON GIVENS, *Appellant*.

No. 1 CA-CR 23-0168
FILED 05-09-2024

---

Appeal from the Superior Court in Yuma County
No. S1400CR202000889
The Honorable Darci D. Weede, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Law Office of Elizabeth M. Hale, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Voice for Crime Victims, Inc., Phoenix
By Colleen Clase
*Counsel for Victims*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1        James Layton Givens appeals his convictions for child abuse and the murder of his youngest daughter, Emily, and three other convictions for child abuse relating to his other three daughters.[1] On appeal, Givens raises several issues, consolidated as follows: 1) did the trial court abuse its discretion by denying his original and renewed motions for judgment of acquittal, or, in the alternative, his motion for a new trial; 2) did the court err by admitting other bad acts evidence; 3) did the court err in precluding examination of his co-defendant and the admission of her statements to law enforcement; 4) did the trial court err by denying his motion for mistrial; and 5) did prosecutorial misconduct deprive him of a fair trial?[2] For the following reasons, we affirm.

**BACKGROUND**

¶2        Givens and Jamie McBride lived together with their four daughters, Edith (9 years old), Jordyn (7), Jennifer (6), and Emily (22 months old), and their many pets. In September 2020, Givens called 911 because the youngest child, Emily, was barely breathing. Emergency services responded and transported her to the hospital for emergency medical care. Shortly after her arrival, Emily was pronounced dead.

¶3        Upon arrival at the hospital, Emily appeared emaciated, her eye sockets and cheeks were sunken, she had no fat on her extremities, her

---

[1]    We use pseudonyms to protect the identities of the victims.

[2]    Givens makes multiple cursory arguments, but fails to adequately develop them or provide legal authority or record citations. In failing to comply with Arizona Rule of Criminal Procedure 31.10(a), he has waived appellate consideration of said arguments. *See State v. Vargas*, 249 Ariz. 186, 190, ¶ 13 (2020) ("[I]f a defendant simply asserts a general claim of error on appeal and fails to develop it, a court is not obligated to consider it."); *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

ribs were visible, and her skin was ashen. She had bedsores consistent with lack of movement. Emily also had contractures—fibrous tissue growing over the knee joints—indicating she had not moved those joints for days or weeks, rendering them inoperable.

**¶4**        The Medical Examiner determined that because of chronic stress and lack of food, Emily did not have a thymus, an organ which typically reaches its maximum size by age two. The soft spot in Emily's skull had still not fused, which typically happens within a year, or 18 months at most. She had no fatty tissue between her skin and bone. Emily weighed only seven pounds, five ounces—less than her birth weight. At the end of the autopsy, the Medical Examiner determined Emily died from dehydration and malnutrition.

**¶5**        On the day Emily died, officers entered the Givens/McBride home and were assaulted by an overwhelming odor of urine and feces. Several dogs were running around both inside and outside, leaving feces on the floor and furniture. The officers saw piles of trash, soiled clothing, cigarette butts, and dirty diapers strewn throughout the house. In the kitchen, rotting food and trash covered all available surfaces, spilling over onto the floor. The two bathrooms were piled high with debris, and one bathroom had so much trash and debris it was not functional. Emily's crib had a plastic-covered mattress with no sheets or blankets. The crib contained a few dirty baby items and a pair of soiled underwear crawling with bugs.

**¶6**        The officers spoke with the three older children. Each of the girls appeared pale, their hair was matted, and their clothing was filthy. Officers released the girls to a family friend. That friend noted the girls did not know how to bathe, brush their teeth, or even wipe themselves after going to the bathroom. Each of the girls had inflamed gums and needed dental care. A forensic nurse documented bruises on various parts of their bodies.

**¶7**        Givens was charged with first-degree murder and four counts of child abuse, one count for each child. Once the State rested its case-in-chief, Givens moved for a judgment of acquittal on all counts under Arizona Rule of Criminal Procedure 20. After argument, the trial court denied Givens' motion. At the end of a three-week trial, the jury returned guilty verdicts on all charges. Givens renewed his Rule 20 motion on counts 3 through 5 and moved for a new trial. *See* Ariz. R. Crim. P. 20, 24.1. The court denied both motions. The court then imposed a life sentence for the felony

murder conviction and consecutive 17-year prison sentences for each child abuse conviction. Givens timely appealed.

## DISCUSSION

**¶8**        Givens challenges the trial court's denial of his motions for judgment of acquittal and for a new trial, arguing there was insufficient evidence to support the convictions. He also argues several evidentiary rulings were in error, the prosecutor engaged in misconduct, and the denial of his motion for mistrial based on that alleged misconduct was in error.

## I.        Sufficiency of the Evidence

### A.        Initial Rule 20 Motion for Judgment of Acquittal

**¶9**        "After the close of evidence . . . the court must enter a judgment of acquittal on any offense charged in an indictment . . . if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). Like an appellate court, the trial court must review the evidence in a light most favorable to the prosecution when deciding whether substantial evidence exists. *State v. Fischer*, 242 Ariz. 44, 49, ¶ 17 (2017). Givens argues the State did not prove the requisite mental state for either the felony murder or child abuse charges. He bases his argument on the assertion that the State failed to present any evidence that he intended to kill Emily or that he knew his actions would cause her death. Givens also argues the State failed to present substantial evidence to support the child abuse convictions regarding the other three children.

**¶10**        To begin, the State was not required to prove that Givens intended or knew his actions would cause Emily's death. Givens was charged with first-degree premeditated murder or, in the alternative, first-degree felony murder. In Arizona, first-degree murder is only one crime regardless of whether it occurs as a premeditated murder or a felony murder. *State v. Carlson*, 237 Ariz. 381, 400–01, ¶ 82 (2015). Since the jury only returned a unanimous verdict that Givens was guilty of felony murder, we will only address felony murder as the method of committing first-degree murder for the sake of brevity. Felony murder occurs if a "person or another person causes the death of any person" in the furtherance of certain offenses, including child abuse. A.R.S. § 13-1105(A)(2). Felony murder does not require proof of specific intent to kill, but it does require proof of the mental state required for commission of the predicate felony. A.R.S. § 13–1105(B); *State v. McLoughlin*, 139 Ariz. 481, 485 (1984). So, the State needed to present sufficient evidence that Emily's

death occurred in the furtherance of one of the enumerated felonies. In this case, the predicate felony was child abuse. *See* A.R.S. § 13-1105(A)(2).

¶11    Givens was charged with four counts of child abuse, one count for each of his four daughters. Child abuse is "an alternative means statute, which refers to an offense that may be committed in multiple ways." *State v. Allen*, 253 Ariz. 306, 313, ¶ 82 (2022). Even though child abuse may be committed in multiple ways, like first-degree murder, it is still one single unified offense. *Id*. So, a person commits child abuse if, "[u]nder circumstances likely to produce death or serious physical injury," he or she (1) causes a child to suffer physical injury; (2) having care or custody of a child, causes or permits the person or health of a child to be injured; or (3) having care or custody of a child, causes or permits a child to be placed in a situation where the person or health of the child is endangered. A.R.S. § 13-3623(A)(1). Jurors need not agree on the theory under which the child abuse was committed; unanimity is required only regarding the fact that the crime of child abuse was committed. *State v. West*, 238 Ariz. 482, 488, 490, ¶¶ 15, 21 (App. 2015).

¶12    The severity of the punishment and classification of felony for a conviction for child abuse is determined by the mental state of the perpetrator. *See* A.R.S. §§ 13-3623(A)(1)–(3); -601(A). For the most severe classification, a class two felony, the mental state of intentionally or knowingly is coupled with the requirement that the victims are under 15. A.R.S. § 13-3623(A)(1). So, if Givens either intentionally or knowingly committed child abuse, he would be guilty of a class two felony. *Id.* If the victim died in furtherance of committing child abuse, Givens committed felony murder. A.R.S. § 13-1105(A)(2).

¶13    In this case, the State had to prove that Givens intentionally or knowingly engaged in conduct that constituted child abuse. When a statute lists two mental states, proof of the lesser mental state is all that is required. *See* A.R.S. § 13-202(C). "'Knowingly' means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b). Further, "[i]t does not require any knowledge of the unlawfulness of the act or omission." *Id.* The "knowing or intentional" mental state for child abuse applies only to the defendant's actions, not to the "[u]nder circumstances likely to produce death or serious physical injury" prong of the statutory inquiry. *See* A.R.S. § 13-3623(A)(1); *accord State v. Millis*, 242 Ariz. 33, 41, ¶ 26 n.7 (App. 2017) (describing the required showing).

### 1.    Child Abuse and Felony Murder of Emily

**¶14**        The State introduced sufficient evidence to overcome Givens' Rule 20 challenge to felony murder resulting from child abuse. Emily lived "[u]nder circumstances" that ultimately caused her death by dehydration and malnutrition. To determine whether circumstances are likely to produce death, the State must present "objective evidence of the existence of such circumstances." *State v. Martinson*, 241 Ariz. 93, 102, ¶ 41 (App. 2016) (citation omitted). Because Emily died of dehydration and malnutrition, that is objective evidence that the circumstances in the Givens/McBride house were likely to cause serious physical injury or death.

**¶15**        Givens argues that McBride was Emily's primary caregiver. He asserts that because he was not her caregiver, he was not responsible for her death. We disagree; he too was Emily's parent and shared parental obligations with McBride. Givens, as Emily's father, had custody and care of Emily—responsibilities he shared with the children's mother. More than one person can share the care and custody of a child. *See State v. Smith*, 188 Ariz. 263, 265 (1996). The care and custody element of the child abuse statute is an objective factual inquiry and not an element for which mental state must be proven. *State v. Payne*, 233 Ariz. 484, 506, ¶ 70 (2013). While under Givens' and McBride's care and custody, Emily suffered multiple serious injuries[3] culminating in her death. *See* A.R.S. § 13-3623(A)(1). Givens does not challenge these facts, but argues he lacked the requisite mental state—he did not know his actions or inaction would cause Emily's death. We disagree.

**¶16**        On the day Emily died, Givens told police that Emily had most or all of her weight that morning. This statement is circumstantial evidence of his knowledge that the child's weight was an issue. Givens' self-serving statement directly conflicts with the observations of both medical and law enforcement personnel. One officer testified he was "in shock" at how skinny and pale Emily appeared. Another officer described Emily being "very pale" and having loose skin around her bones. The responding paramedic described Emily as "appear[ing] to be extremely malnourished . . . just by. . . looking at [her] rib cage, how it was sucked in; you could see the bones; facial structures also very sucked in." Based solely

---

[3]        Serious physical injury is a physical injury that "creates a reasonable risk of death or that causes. . . serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-3623(F)(5).

on Emily's outward appearance, there were ample indicators that she was in medical distress; specifically, that she was starving to death.

¶17 Givens was aware Emily was malnourished and developmentally delayed. Indeed, he sought advice from a friend because Emily was having trouble gaining or maintaining weight. When Givens told the friend that Emily was not eating solid food, the friend was shocked. Givens then backtracked, lying about Emily's age, saying she was only one year old. His attempt to conceal the truth is circumstantial evidence of his knowledge of Emily's condition. Givens' friend then informed him that if Emily continued to lose weight, he should take the child to the doctor. These conversations took place over two months before Emily succumbed to starvation. This is circumstantial evidence that Givens knew that McBride was not feeding Emily enough, and that if she continued to lose weight, she should be taken to the doctor. *See State v. Routhier*, 137 Ariz. 90, 99 (1983) (criminal intent is proven by circumstantial evidence, including the defendant's conduct and comments). Givens did nothing. "This court has found knowledge or intent where the defendant knew the victim needed medical attention, but chose not to act." *Payne*, 233 Ariz. at 507, ¶ 77.

¶18 Emily suffered many physical injuries caused by Givens' actions or inaction as a caregiver: pressure sores, failure to thrive, injuries to her internal organs, dehydration, and malnutrition all leading to her death. Givens' inaction in the face of multiple indicators of physical distress satisfies that he knowingly engaged in that behavior, thereby proving the mental-state element of the child abuse perpetrated on Emily. Because Emily died "in the furtherance of" Givens' commission of child abuse, the trial court properly found that substantial evidence to support his felony murder conviction was presented at trial. A.R.S. § 13-1105(A)(2).

## 2. Child Abuse of the Surviving Children

¶19 The State also introduced sufficient evidence to overcome Givens' Rule 20 challenge to the remaining three counts of child abuse. Givens points to *State v. Greene*, where the children were living in similar filthy conditions, but the trial court found the condition of the home did not alone amount to circumstances "likely" to produce death or serious physical injury. 168 Ariz. 104, 105–08 (App. 1991). He argues that, as in *Greene,* the filthy living conditions here do not amount to "circumstances likely to cause serious physical injury or death," and he too should only be found guilty of the lesser-included form of child abuse. *See id.* at 108; A.R.S. 13-3623(B). Unlike in *Greene*, the circumstances in the Givens/McBride

home led to the death of Emily. Those circumstances not only included filthy conditions, but caregivers who failed to discharge their parental duties to protect their children. Neither parent appeared willing to provide the children with medical care, daily hygiene assistance, proper housing, or proper nutrition. Unlike *Greene*, there was medical testimony that each of the surviving children suffered some physical injury.

¶20        Because child abuse is an alternative means statute, once the State had proven that the circumstances in the Givens/McBride home were "circumstances likely to produce death or serious physical injury," it had two ways to prove child abuse.[4] First, the State could have produced evidence that Givens, a person with custody or care of the children, caused or permitted the persons or health of the children to be injured. A.R.S. § 13-3623(A). Physical injury, under this alternative, means "the impairment of physical condition and includes any skin bruising, pressure sores, bleeding, failure to thrive, malnutrition, dehydration, [and] burns . . . or any physical condition that imperils health or welfare." A.R.S. § 13-3623(F)(4). All three surviving girls had inflamed gums and needed dental care. Jennifer was in the 3% percentile in weight and 23% in height. Edith and Jordyn had bruising or other evidence of injuries that the forensic nurse called "red flags," or indicators of child abuse. Based on medical testimony, each of the children suffered some physical injury while living under circumstances which had already caused the death of their sister. *See* A.R.S. § 13-3623(A), -3623(F)(4).

¶21        The State could also pursue the second alternative, that "having the care or custody of a child," Givens "caus[ed] or permit[ted] a child . . . to be placed in a situation where the person or health of the child . . . is endangered." A.R.S. § 13-3623(A); *see West*, 238 Ariz. at 492, ¶ 28 (the same evidence can be used to prove all three means of child abuse). In the context of the crime of child abuse, "'[e]ndanger' means to subject a child to potential harm that is more than the ordinary danger to which children are exposed daily." *Allen*, 253 Ariz. at 312, ¶ 78. Givens again argues he did not intentionally harm his children. "There is no explicit requirement that the defendant have a specific intent to harm the victim." *Id.* at 314, ¶ 89. But he knowingly allowed them to live in a filthy environment with parents who could not provide adequate care and supervision. Based on the evidence presented, reasonable persons could conclude that Givens

---

4        There was no evidence that Givens caused physical injury to any of the surviving children directly. As a result, the first means of committing child abuse is not at issue. *See* A.R.S. § 13-3623(A).

permitted all four children to be placed in a situation where their health was endangered. *See* A.R.S. § 13-3623(A).

**¶22** The State presented substantial evidence to support the charges of child abuse relating to the surviving children. "[S]ubstantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Allen*, 253 Ariz. at 311, ¶ 70 (citation omitted). The trial court properly denied Givens' Rule 20 motion for judgment of acquittal.

### B.      Renewed Rule 20(b) Motion for Judgment of Acquittal

**¶23** In Givens' post-verdict motion under Rule 20(b), he argued the State only met its burden of proof for the lesser-included child abuse offenses regarding the surviving children. For the first time on appeal, he also argues the verdict was contrary to the weight of the evidence, justifying the granting of a new trial. Generally, arguments raised for the first time on appeal are waived. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007).

**¶24** While our court has discretion to review issues not properly raised in the trial court, if the issue is merely presented and not fully argued, it is considered abandoned. *See State v. Carver*, 160 Ariz. 167, 175 (1989) (citing cases); *State v. Kinney*, 225 Ariz. 550, 554, ¶ 7 n.2 (App. 2010). Givens did not develop this new argument—that the verdicts are contrary to the evidence. For this reason, we decline to address the issue. And to the extent he argues there was insufficient evidence to support his child abuse convictions regarding his surviving children or his assertion that the State only proved the lesser offense, we disagree as addressed above.

## II.     Rule 24.1 Motion for New Trial

**¶25** Givens also filed a motion for new trial after the jury returned guilty verdicts. *See* Ariz. R. Crim. P. 24.1(c). In that motion, he argued the trial court made erroneous evidentiary rulings and the State engaged in prosecutorial misconduct. He also challenged the court's denial of his motion for mistrial based on alleged prosecutorial misconduct. A motion for a new trial may be granted upon a defendant's request if "the verdict is contrary to the law or the weight of the evidence," if the State commits misconduct, or if the court "erred in deciding a matter of law." Ariz. R. Crim. P. 24.1(c). A court's denial of a motion for a new trial is reviewed for an abuse of discretion. *See Fischer*, 242 Ariz. at 48, ¶ 10. We address each argument in turn.

A.      **Evidentiary Rulings**

**¶26**        Givens asserts that the trial court erred by admitting and precluding certain pieces of evidence, depriving him of a fair trial. Because Givens has shown no abuse of discretion, we reject his arguments.

1.      **Admission of "Other Acts" Evidence**

**¶27**         Givens argues that the trial court should have precluded testimony about cigarette burns and bruising found on the children. Givens believes such evidence constituted "other acts" propensity evidence generally prohibited by Arizona Rule of Evidence 404(b)(1): "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Givens misconstrues the nature of the evidence presented.

**¶28**        The State did not try to prove that Givens burned or bruised his children; that would be "other acts" evidence subject to a Rule 404(b) analysis. Rather, the evidence was introduced to demonstrate that Givens, a person "having the care or custody of [the] child[ren] . . . permit[ted] the person or health of the child[ren] . . . to be injured . . . or placed [the children] in a situation where [their] person[s] or health . . . [were] endangered." A.R.S. § 13-3623(A)(1). Evidence of the burns and bruises were relevant evidence whether or not Givens was the one who caused the injuries. The evidence was offered to prove an element of the child abuse charges. *See* A.R.S. § 13-3623(A)(1). Because that evidence is "not evidence of other acts attributable to [the defendant], its admissibility . . . is analyzed . . . for its relevancy under Rule 401," not as "other acts" evidence under Rule 404(b). *State v. Togar*, 248 Ariz. 567, 573, ¶ 19 (App. 2020). So, the court did not err in admitting the evidence after finding it to be intrinsic to the charges and relevant to the inquiry before the jury.

2.      **Nurse's Testimony re: "Red Flag" Injuries**

**¶29**        Givens next posits that even if the evidence of the children's bruising and burns was not "other acts" evidence, the forensic nurse's testimony was inadmissible profile evidence. It is well established that expert witnesses are allowed to testify that injuries suffered by a child were not accidental. *State v. Moyer*, 151 Ariz. 253, 255 (App. 1986) ("[E]xpert testimony coupled with additional proof that the injuries occurred while the child was entrusted to the care of the defendant is sufficient for a verdict of guilt.") (citations omitted). The forensic nurse testified that the two surviving older children had bruises or other scars that were cause for concern, or "red flags." The nurse testified only about injuries she observed

10

on the children and whether they were injuries inconsistent with childhood bumps and bruises. She did not opine about how the girls got the injuries. This information goes directly to the charged offenses as more fully set forth above.

**¶30**     The "pattern injuries" or cigarette-burn evidence on the oldest child was observable and noted in the nurse's evaluation. The nurse testified that she observed healed burn scars only. She did not ascribe fault nor try to determine how old the injuries were or how they had come to be on the child's arms. The fact that the "pattern injuries" were present goes to the child living in a situation where her health and safety were endangered while in her parents' custody or care. A.R.S. § 13-3623(A)(1). Being burned by a cigarette is "more than the ordinary danger to which children are exposed daily." *Allen*, 253 Ariz. at 312, ¶ 78. The admission of this evidence was therefore not error.

### 3.     Preclusion of Co-Defendant Evidence

**¶31**     Givens argues the trial court committed error by allowing McBride to assert a blanket Fifth Amendment invocation. He also challenges the court's decision that McBride's prior statements were inadmissible hearsay. Givens has shown no error.

### a.     Fifth Amendment Invocation

**¶32**     We review a court's decision to preclude a defendant from calling a witness who will assert her Fifth Amendment privilege before the jury for an abuse of discretion. *State v. Harrod*, 218 Ariz. 268, 275–76, ¶ 19 (2008). Both the U.S. Constitution and the Arizona Constitution afford witnesses a right against self-incrimination. U.S. Const. amend. V; Ariz. Const. art. 2 § 10. Similarly, both constitutions secure a defendant's right to a fair trial, including the right to compel witnesses. U.S. Const. amend. VI; Ariz. Const. art. 2 § 24. A conflict of rights arises when a defendant seeks to compel testimony from a co-defendant and the co-defendant invokes the protection from compelling self-incriminating testimony. Neither right is absolute. *See State v. Cornejo*, 139 Ariz. 204, 207 (App. 1983); *State v. McDaniel*, 136 Ariz. 188, 193–94 (1983).

**¶33**     The Sixth Amendment right to compel a witness to testify may be restricted. *See McDaniel*, 136 Ariz. at 194. Similarly, a witness may only assert a blanket Fifth Amendment invocation if the court finds the witness has "a reasonable ground to apprehend danger . . . from his being compelled to answer." *Cornejo*, 139 Ariz. at 207. If the court has "extensive knowledge of the case," it may allow a witness to summarily invoke her

Fifth Amendment privilege without questioning the witness, allowing counsel to call the witness to the stand, or conducting a hearing. *State v. Maldonado*, 181 Ariz. 208, 210–11 (App. 1994); *see also State v. Corrales*, 138 Ariz. 583, 588 (1983) (decision to allow counsel to call a witness "who has indicated he or she will refuse to testify" is within the court's discretion).

**¶34**  Givens argues the trial court failed to engage in the required inquiry before allowing McBride to assert a blanket privilege. However, he concedes that a court may "forgo [a] hearing if it 'can obtain by other methods the extensive knowledge of the case.'" Here, the court was aware that McBride was facing a trial on similar charges. The court was also aware she was advised by counsel not to testify in Givens' trial. When the court allowed McBride to invoke her privilege, the State had presented its case-in-chief, and defense counsel was presenting Givens' defense. The court had extensive knowledge of the case and did not abuse its discretion in finding that McBride had "a reasonable ground to apprehend danger" if she testified. *See Cornejo*, 139 Ariz. at 207. We affirm this ruling accordingly.[5]

### b. Prior Statements

**¶35**  We review rulings on the admissibility of evidence for an abuse of discretion and only reverse such rulings if we find clear prejudice. *Fischer*, 219 Ariz. at 416, ¶ 24. At trial, Givens sought to introduce statements McBride made to law enforcement, including statements that she was responsible for feeding Emily and that she was the primary care provider. McBride told the police she was aware of Emily's bedsores and vomiting but that she did not seek medical attention. McBride also told detectives that "it" was her fault.

**¶36**  The rule against hearsay precludes introduction of hearsay statements made by unavailable witnesses unless an exception applies. Ariz. R. Evid. 802, 804(b). A declarant is considered unavailable if he or she is exempted from testifying pursuant to a privilege. Ariz. R. Evid. 804(a)(1); *see also State v. Lopez*, 159 Ariz. 52, 54 (1988) (witness who asserted Fifth Amendment privilege not to testify "appropriately determined to be unavailable"). One exception to the preclusion of hearsay is a "statement

---

5 Givens mentions that the State should have granted McBride immunity. However, he abandoned this claim by failing to argue it, and it fails on the merits: "[i]t is a matter of prosecutorial discretion to decide when the public interest would be best served by a grant of immunity." *State v. Verdugo*, 124 Ariz. 91, 94 (1979); *see also Carver*, 160 Ariz. at 175 (waiver).

against interest." Ariz. R. Evid. 804(b)(3). A statement against interest is a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made," it had the tendency to "expose the declarant to . . . criminal liability" and, if offered in a criminal case as a statement tending to expose the declarant to criminal liability, "is supported by corroborating circumstances that clearly indicate its trustworthiness." *Id.* Arguably, each of the statements made by McBride were statements against her penal interest.

**¶37**		After voir dire examination, the trial court precluded admission of McBride's statements to law enforcement. The court found them not to be statements against interest. In its ruling, the court stated there was no evidence of the actual statements McBride made to law enforcement during her interview. That was error. The testimony of the officers provided adequate evidence of the actual statements made to them by McBride such that the court could have analyzed each statement independently. Though we find the preclusion of the interview statements to be in error, we find that error to be harmless.

**¶38**		"Error is harmless if we can declare, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Medina*, 178 Ariz. 570, 577 (1994). One parent stating that the death of a child was "my fault" does not mean the other parent was not also responsible. Given the quantum of the evidence presented to the jury, whether McBride believed Emily's death was her fault was irrelevant to the determination of Givens' responsibility for Emily's death. Because each parent owed the child a duty of care independent of the other, the preclusion of McBride's statements, while in error, was harmless because the State met its burden of showing that the error did not contribute to or affect the verdicts reached.

### B.	Prosecutorial Misconduct

**¶39**		Finally, Givens argues that the State committed prosecutorial misconduct when it "misstated" and "misconstrued" the evidence and harassed him on the stand, thereby denying him his right to a fair trial. He also argues that the State's choice not to introduce interviews of the child victims was misconduct. Again, we disagree.

**¶40**		Givens asserts that the State misstated the evidence in its opening statement by saying there was "no food in the house for [Emily]." This was a misstatement of what the trial evidence later showed. But Givens failed to object at trial. Therefore, we review the alleged misconduct for fundamental error. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). To

succeed on a claim of cumulative prosecutorial misconduct, Givens must first show that misconduct occurred. *State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005). He must then show that such misconduct "could have affected the jury's verdict, thereby denying [him] a fair trial." *Id.*

**¶41**　　　The trial court instructed the jury that the lawyers' opening statements are not evidence, and the jury had the benefit of receiving the actual evidence following this statement. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) ("We presume that the jurors followed the court's instructions."). We find the misstatement was just that—a misstatement. Even had it been intentional, it did not create prejudice here because the jury received actual evidence of the food available in the Givens/McBride home.

**¶42**　　　Givens then claims the State committed prosecutorial misconduct when it decided not to introduce interview footage of Givens' surviving daughters. "A trial court . . . has no general duty or authority to second-guess the strategic decisions by trial counsel." *State v. Medina*, 232 Ariz. 391, 403, ¶ 35 (2013). Here, Givens sought to introduce the evidence himself and was ultimately successful. The jury heard the evidence; which party introduced that evidence is of no consequence and cannot constitute prosecutorial misconduct.

### III.　Givens' Cross-Examination and Denial of Motion for Mistrial

**¶43**　　　Givens next argues that the State's cross-examination about whether he believed Emily could have lost all her weight in a day and whether he believed his daughters could have caused Emily's death by leaving her outside was argumentative and improper. Defense counsel objected to this line of questioning, but the objection was overruled. Defense counsel then moved for a mistrial on that basis. The trial court denied the motion. Givens now challenges that ruling, claiming that he was denied a fair trial.

**¶44**　　　We review the denial of a mistrial motion for an abuse of discretion. *State v. Marshall*, 197 Ariz. 496, 500, ¶ 10 (App. 2000). Here, we must first determine whether the questioning was improper. *See Anderson*, 210 Ariz. at 340, ¶ 45. The State may not question witnesses in an "abusive, argumentative, [or] harassing" manner. *Pool v. Superior Court (State)*, 139 Ariz. 98, 103 (1984). Questioning a defendant in a way that is "extremely combative and badgering" is considered misconduct. *See State v. Arias*, 248 Ariz. 546, 557, ¶ 37 (App. 2020).

¶45　　　　Givens elected to testify in his own defense. The prosecutor asked Givens to explain his beliefs about how his daughter could have died. This line of questioning goes directly to challenging his defense that he was unaware of Emily's condition or, in the alternative, that the other children taking Emily outside caused her death. We therefore affirm the trial court's denial of the mistrial motion finding no prosecutorial misconduct.

¶46　　　　To the extent that Givens raised a cumulative prosecutorial misconduct claim, we find no misconduct, let alone misconduct that could have affected the jury's verdict. *See Anderson*, 210 Ariz. at 340, ¶ 45.

## CONCLUSION

¶47　　　　We affirm Givens' convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:　　TM